182 N.J. Super. 422 (1981)
442 A.2d 617
ANTONE BACARDI AND DIANNE BACARDI, PLAINTIFFS-APPELLANTS,
v.
IRA J. HOLZMAN, M.D., AND LEDERLE LABORATORIES, INC., A DIVISION OF AMERICAN CYANAMID COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1981.
Decided December 30, 1981.
*423 Before Judges BISCHOFF, KING and POLOW.
William J. Wolf argued the cause for the appellants (Bathgate, Wegener, Wouters & Neumann, attorneys; William J. Wolf on the brief).
Robert F. Novins argued the cause for respondents (Novins, Farley, Grossman & York, attorneys; Robert F. Novins of counsel; Lorna S. Scanlon on the brief).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
In this pharmaceutical products liability case the chief issue presented is whether the manufacturer of a drug which is dispensed only on a physician's renewable prescription has a duty to warn the consumer of potential adverse effects which may occur from extended use of the drug. We hold no such duty exists.
Plaintiff Antone Bacardi suffered from glaucoma since 1969. For a significant portion of those years he had been taking the drug Diamox to control that condition. This drug had been prescribed for him by a series of doctors and the prescriptions were renewable, one being renewed by plaintiff 13 times over a period of 17 months. In October 1975 plaintiff developed a a pain in his right flank and was hospitalized for diagnosis and treatment. After examination it was determined plaintiff had *424 developed kidney stones. The stones were passed spontaneously. In 1977 plaintiff developed additional urinary tract problems. He was again hospitalized and again kidney stones were diagnosed as the source of his trouble. They were surgically removed. At this time the doctors suspected Diamox as a cause of the recurring kidney stones and recommended the use of the drug Neptazane in place of Diamox. Plaintiff discontinued the use of Diamox and has ever since been symptom-free insofar as his urinary tract is concerned. The drug Diamox is manufactured by defendant Lederle Laboratories, Inc. That company recognized the occurrence of "renal calculus" as a common adverse reaction to the use of the drug, and this information was published in the Physician's Desk Reference and provided in package circulars. Lederle further provided brochures to physicians to supplement the package circulars upon request.
Plaintiff instituted this action against the doctor who prescribed Diamox and also Lederle. Plaintiff thereafter settled with the doctor. In the action against Lederle plaintiff alleged that (1) Lederle had a duty to warn all users of Diamox of its potential adverse effects, which duty it negligently breached, and (2) Lederle was strictly liable in tort.
Plaintiff contended that despite the printed material available, he had never been furnished with a package insert or with information concerning possible adverse consequences following his use of Diamox.
Defendant's motion for summary judgment was granted, the judge holding that while it is the general rule that an ethical drug manufacturer has "a duty to warn the intended or foreseeable consumer of a product of its dangerous aspects," this duty does not exist where there is an intermediary who "is not a mere conduit of the product, but rather administers it on an individual basis or recommends it in some way implying an independent duty to evaluate the risk and transmit relevant warnings to the user."
*425 Plaintiff appeals and argues that (1) defendant is strictly liable to plaintiff in tort and (2) his injuries were proximately caused by defendant's defective product.
Plaintiff explains that in the context of this case the alleged defect upon which his allegation of strict liability is predicated consists of the failure of the manufacturer to warn plaintiff of potential adverse consequences following the use of the drug, and also that the "renal and uretal calculi" which he developed was the result of "the very condition that the defendant failed to warn him about." See Torsiello v. Whitehall Laboratories, 165 N.J. Super. 311, 320, n. 2 (App.Div. 1979), certif. den. 81 N.J. 50 (1979).
It is the general rule that in the case of prescription drugs warnings of potential adverse effects to the prescribing physician is sufficient. Torsiello, supra 165 N.J. Super. at 322-323; Davis v. Wyeth Laboratories, Inc., 399 F.2d 121, 130 (9 Cir.1968); Reyes v. Wyeth Laboratories, 498 F.2d 1264 (5 Cir.1974), cert. den. 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); Products Liability, "The Ethical Drug Manufacturer's Liability," 18 Rutg.L.Rev. 947, 985-986 (1964), 3 Frumer and Friedman, Products Liability, § 33.01[3] at 2412 et seq. The reason for the rule is explained in the Davis case in the following terms:
Ordinarily in the case of prescription drugs warning to the prescribing physician is sufficient. In such cases the choice involved is essentially a medical one involving an assessment of medical risks in the light of the physician's knowledge of this patient's needs and susceptibilities. Further it is difficult under such circumstances for the manufacturer, by label or direct communication, to reach the consumer with a warning. A warning to the medical profession is in such cases the only effective means by which a warning could help the patient. [at 130]
Plaintiff argues that the duty to warn should be extended to the consumer in this case because of the circumstances under which the drug was administered. In an attempt to bring his case within the holdings of the Davis and Reyes cases, plaintiff points to the fact that over the years he was treated by several doctors; that he had gone to clinics and hospitals and was an outpatient at a large hospital, and that he did not even know the names of some of the physicians who had treated him.
*426 Davis and Reyes are clearly distinguishable. Both of those cases involve polio vaccine administered in mass public immunization projects. The drug was administered by a registered nurse or other intermediary who was a mere conduit for the drug. There was no "individualized balancing by a physician of the risks involved." Davis, 399 F.2d at 131; in accord Reyes, 498 F.2d at 1276. Here, on the other hand the Diamox was prescribed to treat an existing condition rather than to prevent a disease. Diagnosis and treatment removes this case from the "mere conduit" category.
Plaintiff also claims that since this is the type of a drug that is normally taken for an extended period of time and can be prescribed by renewable prescriptions, the drug manufacturer should have foreseen that the physician is not continuously monitoring the patient and should have warned the consumer of the dangers of long use of the drug. We disagree. The manufacturer has no duty to prepare a warning for the consumer when, under all circumstances, the product only comes into the consumer's hands after it is prescribed by the physician. There is no basis for concluding that the manufacturer should have foreseen that the ultimate consumer would be in the position to make a layman's judgment in terms of whether to continue with the use of the drug or not.
Plaintiff finally contends that it was improper for the trial judge to grant summary judgment because there was a "genuine issue as to a material fact." R. 4:46-2, Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 75 (1954).
Plaintiff concedes that Diamox can only be obtained by means of a physician's prescriptions but argues that it is a factual issue whether the manner in which he gained access to the drug made it a nonprescription drug, thus imposing on defendant the obligation of warning the consumer directly of potential adverse consequences following the use of the drug. This issue, he argues, results from the renewable nature of the prescriptions written by the doctors for the drug. Plaintiff refers to the fact *427 that one prescription alone was renewed 13 times in 17 months. Again, plaintiff relies upon the cases of Davis and Reyes, both supra, and Givens v. Lederle, 556 F.2d 1341 (5 Cir.1977). As we pointed out above, while the drug (vaccine) was acknowledged to be a prescription drug in those cases, it was not dispensed as such. "It was dispensed to all comers at mass clinics without an individualized balancing by a physician of the risks involved." Davis, 399 F.2d at 131. Moreover, in those cases the drug company had taken an active part in setting up the immunization programs and knew the program did not make provisions for advertising or consultation, for advising the public of potential side effects. The courts in those cases did not hold that the vaccine, by its method of use, became a nonprescription drug. They held that the unique method of administration of the prescription drug extended the duty to warn beyond the physician. No such unique circumstances exist here. Diamox is conceded to be a prescription drug and was administered to plaintiff as such. We hold no genuine issue of a material fact was presented and the trial judge properly considered and ruled upon defendant's motion for summary judgment.
Affirmed.