Jane W. HOFHERR and Robert A. Hofherr, Plaintiffs–Appellants,

v.

DART INDUSTRIES, INC., Defendant–Appellee,

and

Eli Lilly & Company, Defendant.

No. 87–1644.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1987.

Decided Aug. 5, 1988.

---

Michelle Adrien Parfitt (Peter T. Enslein, Peter T. Nicholl, Ashcraft & Gerel, James F. Rosner, Whiteford, Taylor & Preston, on brief) for plaintiffs-appellants.

A. Edward Grashof (Sheila Moeller Fessler, Winthrop, Stimson, Putnam & Roberts, Thomas J. Wohlgemuth, Smith & Wohlgemuth, on brief) for defendant-appellee.

Before WIDENER and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

WIDENER, Circuit Judge:

Plaintiffs, Jane and Robert Hofherr, appeal from a directed verdict entered against them in this diversity action. The Hofherrs instituted this products liability

case against Dart Industries, Inc. (Dart) and Eli Lilly & Company (Lilly) for injuries suffered by Mrs. Hofherr allegedly as a result of her mother's ingestion of the drug diethylstilbestrol (DES) while pregnant.[1] During the trial, the plaintiffs settled with Lilly. Prior to the conclusion of the Hofherr's case in chief, the district court granted a directed verdict in Dart's favor on the grounds that the Hofherrs had failed to present sufficient evidence to permit a jury to find liability. We agree with the district court and we affirm.

Jane Hofherr's mother, Doris Wiles, took the drug DES while she was pregnant with Jane in 1959. Her physician, Dr. Robert Tunney, prescribed DES as a precaution to prevent a possible miscarriage. Mrs. Wiles took the drug for approximately 30 weeks during her pregnancy. Jane Hofherr was born on February 10, 1960. Twenty-three years later, Jane was diagnosed as suffering from permanent gynecological injuries allegedly as a result of her prenatal exposure to DES which allegedly resulted in her infertility.

Mrs. Wiles testified that she purchased the DES tablets from Tennant's Professional Pharmacy located in Baltimore, Maryland. Tennant's was a locally and independently owned franchise of the Rexall Drugstore chain.[2] Mrs. Wiles also testified that she remembers the DES tablets to have been shiny red hard coated tablets, a little smaller than an aspirin tablet. While Rexall did produce DES during the relevant time frame and supplied it to franchise stores, it is uncontroverted that Rexall did not produce DES in a red tablet form. There also exists no record of Tennant's Pharmacy purchasing DES or any other prescription drug from Rexall. Thus, while plaintiffs have proven that the DES responsible for Mrs. Hofherr's injuries was purchased from Tennant's Pharmacy, it is undisputed that the drug was actually manufactured by a pharmaceutical company other than Rexall.

As this case arises under diversity jurisdiction, the law of Maryland applies. *Erie RR Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1983). The plaintiffs seek to hold Dart liable for Mrs. Hofherr's injuries on two theories of liability. First, they contend that Tennant's was either an express or apparent agent of Rexall, thus Rexall was responsible for Tennant's sale of the non-Rexall DES to Mrs. Wiles. Second, since Rexall was a manufacturer of DES, it had a non-delegable duty to warn its franchisees of the potential dangers of DES irrespective of whether the franchisees were agents of Rexall. In any event, plaintiffs argue, Rexall had a duty to warn physicians of the side effects of the drug, and this was not done. Prior to the completion of the Hofherrs' case in chief, the district court rejected plaintiffs' arguments and directed a verdict on the grounds that the Hofherrs had not presented sufficient evidence to let the issue of liability go to a jury.[3]

Plaintiffs' theory of recovery, in short, is that, since Tennant's sold the DES to Mrs. Wiles and if Tennant's was Rexall's agent, then Rexall had a duty to warn physicians and franchisees of the dangers of the drug, even if Rexall had not manufactured the DES pills in question.

As an alternate theory, plaintiffs argue that Rexall had a non-delegable duty to warn of the dangers of the drug.

"The standard for granting a directed verdict requires a court to view the evidence in the light most favorable to the non-moving party and draw every legit-

---

**1.** A discussion of the extensive litigation occasioned by the drug DES is contained in *Ryan v. Eli Lilly & Co.*, 514 F.Supp. 1004 (D.S.C.1981).

**2.** Rexall has since changed its name to Dart Industries. As this was merely a name change and not a corporate reorganization, there is no issue of whether Dart is liable for acts committed while it operated as Rexall. The two names will be used interchangeably. Tennant's Pharmacy has also changed hands and is now oper-

ated as Chestnut Pharmacy. The pharmacy, whether Tennant's or Chestnut, has not been sued in this action.

**3.** The district court did not wait until the completion of the plaintiffs' case because the plaintiffs represented to the court that they had no further evidence to present relevant to the issues at hand. The remaining evidence went to other issues.

imate inference in favor of that party; having treated the adjudicatory facts in this fashion, the court must determine whether a reasonable trier of fact could draw only one conclusion from the evidence." *Smithy Braedon Co. v. Hadid*, 825 F.2d 787, 790 (4th Cir.1987). If there is but one reasonable conclusion under the applicable law, a directed verdict under Fed.R.Civ.P. 50(a) is proper. *Brady v. Southern R. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943). Conversely, where reasonable minds can differ, the court cannot direct the verdict. In light of that standard of review, we must analyze plaintiffs' theories of liability.

◼ Under Maryland law, three elements must be proved in order to establish an express agency. First, the agent must be subject to the principal's right of control. Second, the agent must have a duty to act primarily for the benefit of the principal. Finally, the agent must hold the power to alter the legal relationships of the principal. *Schear v. Motel Management Corp.*, 61 Md.App. 670, 487 A.2d 1240, 1248–49 (1985). The Maryland courts as well as the district court in the instant case have stressed the importance of the first element, control. *Schear*, 487 A.2d at 1248–49. The burden of proving the existence of an agency relationship is upon the party who seeks to rely upon it. *P. Flanigan & Sons, Inc. v. Childs*, 251 Md. 646, 655, 248 A.2d 473, 478 (1968). A critical issue is intent of the parties which may be inferred by the agreements entered into and the actions of the parties. *Ramsburg v. Sykes*, 221 Md. 438, 158 A.2d 106, 108 (1960). In this case, the evidence relied upon by the plaintiffs to establish agency consisted of the sample franchise contract[4] and the deposition of John Secrist, a former employee of Rexall.

◼ The agreement at issue is little more than an agreement for Tennant's to sell Rexall products at retail. It does give Rexall some leverage with respect to the marketing of Rexall products, however, that leverage being primarily the threat of franchise revocation for contract violation. The Secrist testimony can be taken to support this as well. What is missing, however, is any evidence of control by Rexall over Tennant's marketing of prescription drugs of other manufacturers. Indeed, the evidence is that Tennant's marketed prescription drugs, including DES, only of other manufacturers. Nor is there any evidence indicating that Rexall could or did exercise any control over the day to day operations of Tennant's Pharmacy. The plaintiffs liken the instant case to *Drexel v. Union Prescription Center, Inc.*, 582 F.2d 781 (3rd Cir.1978). In *Drexel*, the court held that whether a pharmacy was the agent of the franchisor was a jury question. The agreement at issue in *Drexel*, however, was a highly detailed contract which allowed the franchisor to control the day to day operations and manner of doing business of the franchisee. That type of day to day control over management details is absent here. Thus, there is not sufficient evidence, even with the inferences in plaintiffs' favor, for a jury to conclude that Rexall controlled Tennant's Pharmacy sufficiently to create an express agency.

◼ With respect to apparent agency, the result is just as clear. Under Maryland law, two elements are necessary in order to establish an apparent agency. First, the principal must by its acts and conduct hold out the alleged agent as being authorized to act in the principal's behalf. Second, the third party must rely in good faith upon this representation. *B.P. Oil Corp. v. Mabe*, 279 Md. 632, 643, 370 A.2d 554 (1977).[5] Even assuming, and we intimate no opinion on the question, that Rexall held

---

4. The actual franchise agreement was unavailable but the parties agreed that the sample agreement was representative of the type of agreement Rexall routinely entered into.

5. Maryland law apparently distinguishes between apparent agency and agency by estoppel, but there is "no clear line of demarcation."

Each requires a holding out by the principal to a third party and a reliance by the third party on the holding out. *Reserve Insurance Co. v. Duckett*, 240 Md. 591, 214 A.2d 754, 759–60 (1965). We make no attempt to distinguish the two theories here.

out Tennant's Pharmacy sufficiently to satisfy the first element, the plaintiffs produced no evidence on the issue of reliance which tended to show Mrs. Wiles' reliance on Rexall. Indeed, Mrs. Wiles testified that she chose Tennant's because her husband had recommended the store as being reliable, not because Tennant's was a Rexall store. The district court quite properly concluded that there was no evidence by which a jury could reasonably conclude that Tennant's was Rexall's apparent agent.

■ So the plaintiffs' first theory of recovery must fail because neither Rexall nor its agent sold the DES pills to Mrs. Wiles. Assuming, as may well be the case, a duty on the part of Rexall to warn physicians of the dangers of use of the drug sold by Rexall or its agent, no such sale has been shown here. Rexall is not responsible for the sale of other pharmaceutical manufacturers' DES pills by Tennant's pharmacy. *Ryan v. Eli·Lilly & Co.*, 514 F.Supp. 1004, 1006–08 (D.S.C.1981). *Ryan* contains an excellent review of the authorities.

■ The final argument advanced by the plaintiffs is that Rexall had a non-delegable duty to warn of the side effects of the drug. This theory of liability, sometimes called the peculiar risk exception, is an exception to the general rule that one who employs an independent contractor is not responsible for the torts of the independent contractor, and arises out of a non-delegable duty on the part of the employer of a particular contractor because of some relation to the plaintiff or the peculiarly dangerous nature of the work. This exception was explored under Maryland law in *Rowley v. City of Baltimore*, 305 Md. 456, 505 A.2d 494 (1986). In that case, it was held that the City of Baltimore had a non-delegable duty to maintain the city convention center in a reasonably safe condition, a duty unaltered by the fact that the city had retained an independent contractor to repair and maintain the facility.

Plaintiffs depend on *Wilson v. Good Humor Corp.*, 757 F.2d 1293 (D.C.Cir.1985). In *Wilson*, the plaintiffs had brought a wrongful death action against the Good

Humor Ice Cream Company. One of the Good Humor vending trucks had stopped on a busy street whereupon the plaintiffs' daughter had been killed crossing the street to buy ice cream. The trucks were operated under a franchising arrangement as independent contractors. The district court had directed a verdict in favor of the Good Humor Corporation. The court of appeals agreed that Good Humor could not be held liable under any agency theory, but nevertheless reversed the directed verdict on the theory of a peculiar risk foreseeable by Good Humor, an exception to the general rule of non-liability for the acts of independent contractors. The evidence in that case had shown that Good Humor was aware of the risks the trucks created when parking on busy streets, and, prior to the franchising of the drivers, Good Humor had specifically addressed this very problem.

■ The analogy, however, which the plaintiffs seek to draw between the cases in which an employer of an independent contractor has a non-delegable duty to a person injured, such as to the child purchasing ice cream in *Wilson*, will not withstand analysis in the case of a prescription drug, as here. Any obligation of Rexall to the consumer to warn was not to warn the consumer or the franchisee of the prescription drug, rather to warn the physician who prescribed it. *Swayze v. McNeil Laboratories, Inc.*, 807 F.2d 464 (5th Cir.1987); *Bacardi v. Holzman*, 182 N.J.Super. 422, 442 A.2d 617 (N.J.Superior App.Div.1981); see generally 3B Frumer and Friedman, *Products Liability* § 50.03[1][c] (1987). While the Maryland courts have not directly addressed this question, *Nolan v. Dillon*, 261 Md. 516, 276 A.2d 36 (1971), indicates that they would follow this general rule.

It follows, then, that plaintiffs may not prevail on their second theory of liability. To hold otherwise would create an intolerable confusion and foster obviously dangerous practices in the consumption of prescription drugs. Prescription drugs, of course, are purchased from a pharmacist only on the prescription of a physician. If the law is going to require, as plaintiffs would have it, that the physician be second-

guessed by the pharmacist as well as the manufacturer, only danger could result. A pharmacist or a manufacturer who advised a patient not to take a drug prescribed by a physician might easily cause death or serious injury, and we think the practice of medicine by pharmacists and pharmaceutical manufacturers is not a field in which we should even encourage them to engage, much less require it, as plaintiffs would have.

The judgment of the district court is accordingly

AFFIRMED.