**Jacqueline M. LACY, Plaintiff Below, Appellant,**

v.

**G.D. SEARLE & CO., a Delaware corporation, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: March 14, 1989.
Decided: Sept. 1, 1989.
Rehearing Denied Nov. 17, 1989.

Ben T. Castle, and Melanie K. Sharp (argued) of Young, Conaway, Stargatt & Taylor, and John G. Abramo of Abramo & Abramo, Wilmington, for appellant.

F. Alton Tybout and Robert S. Goldman of Tybout, Redfearn, Casarino & Pell, Wilmington, and Paul F. Strain and Elizabeth C. Honeywell (argued) of Venable, Baetjer and Howard, Baltimore, Md., for appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

CHRISTIE, Chief Justice:

In this case the Court is called upon to decide whether a user of an intrauterine device ("IUD") who has recovered a medical malpractice judgment against her physician for improperly inserting the IUD may also seek to recover additional damages in the form of punitive damages against the IUD manufacturer. The right to recover punitive damages is in the first instance dependent upon a finding of liability on the part of the manufacturer, and the Superior Court ruled that the manufacturer was not liable. We hold that the IUD manufacturer sent an adequate instruction brochure to the physician together with the IUD, and that the physician, when he failed to heed the warnings in the brochure, was a "learned intermediary." Therefore, the IUD manufacturer is now free of possible liability to the patient for the improper insertion of the device, and we affirm the holding of the Superior Court which precluded the claim against the manufacturer.

This case arises out of a medical malpractice suit brought by Jacqueline M. Lacy, the plaintiff/appellant, against four defendants, G.D. Searle & Co. ("Searle"), the defendant/appellee, the Wilmington Medical Center, Inc. ("Medical Center"), and Dr. Richard Raiber and his professional corporation ("Raiber"). The complaint alleged that Dr. Raiber implanted an IUD into Lacy too soon after she had delivered a child. Lacy also contended that Searle did not advise her in enough detail concerning the medical risks associated with the use of an IUD and sought compensatory and punitive damages. Before trial, Searle moved for summary judgment as to its liability. The Superior Court noted that as a general rule the manufacturer of a drug (and by inference a medical device) has a duty to warn a user of the dangers involved in the use of its product as is noted in Section 388 of the Restatement (Second) of Torts (1964), and that in this instance Searle also had a duty to warn an IUD user based on the provisions of a federal regulation. *See*

21 C.F.R. § 310.502(b)(2) (1987). The Superior Court held that Searle had satisfied its duty pursuant to the federal regulation by enclosing a patient information brochure with the IUD, and that Lacy was foreclosed from alleging that the brochure was insufficient because the physician who inserted the IUD acted as a "learned intermediary" and thus abrogated any alleged insufficiency in Searle's patient warning. On this basis, the Superior Court granted Searle's motion for summary judgment.

After the Superior Court granted Searle summary judgment, the appellant's claim against the remaining defendants went to trial. At trial, she presented evidence which showed that on October 5, 1981, six weeks and one day after she had given birth to her first child, Lacy visited the office of Dr. Raiber, her gynecologist, to discuss methods of birth control. In the course of a brief discussion Dr. Raiber and Lacy agreed that an IUD would be an appropriate form of birth control in her case. Dr. Raiber chose a Cu–7 IUD, which was manufactured by Searle. Searle's Cu–7 physician label warned physicians that there was a risk of uterine perforation by the Cu–7 if it was inserted earlier than two months after the patient had been pregnant, because the uterus would not have returned to its normal size. Although Lacy had been pregnant only forty-three days earlier and her uterus had not yet returned to its normal size, Dr. Raiber fitted Lacy with a Cu–7 IUD.

When the IUD was inserted, Lacy experienced severe cramping. She was told that some cramping was normal and was told to come back in several months for a checkup. In fact, the IUD partially perforated and became embedded in the uterus. Due to the perforation it was necessary to perform surgery. Both of Lacy's fallopian tubes and ovaries were removed during surgery, so that she is no longer able to bear children.

At the close of the trial the jury returned a verdict for the plaintiff in the amount of $400,000. Fault was apportioned 65% against Dr. Raiber ($260,000). The remaining 35% fault was apportioned against the Medical Center (which had settled during the trial for $150,000). Thus the plaintiff has received $410,000 as compensatory compensation for her injury.

On appeal, Lacy seeks to revive her claim for punitive damages against Searle. Lacy contends that the Superior Court erred as a matter of law in applying the doctrine of the "learned intermediary" to bar her suit against the manufacturer, and in addition she asserts that it was inappropriate to apply the doctrine in this case because a federal regulation requires the IUD manufacturer to provide the user with a patient brochure. We affirm the ruling of the Superior Court.

In granting Searle's motion for summary judgment the Superior Court relied upon the "learned intermediary" doctrine. Although the application of this doctrine is an issue of first impression in Delaware, the learned intermediary doctrine has been employed in many other jurisdictions. *See, e.g., Beyette v. Ortho Pharmaceutical Corp.,* 6th Cir., 823 F.2d 990, 992 (1987); *Hoffman v. Sterling Drug, Inc.,* 3d Cir., 485 F.2d 132, 142 (1973); *Seley v. G.D. Searle & Co.,* 67 Ohio St.2d 192, 423 N.E.2d 831 (1981); *Terhune v. A.H. Robins,* 90 Wash.2d 9, 577 P.2d 975, 978 (1978); *Vaughn v. G.D. Searle & Co.,* 272 Or. 367, 536 P.2d 1247 (1975) *(en banc), cert. denied,* 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976); *Bacardi v. Holzman,* 182 N.J.Super., 422, 442 A.2d 617 (1981); *Leibowitz v. Ortho Pharmaceutical Corp.,* 224 Pa.Super. 418, 307 A.2d 449 (1973).

The learned intermediary doctrine provides for an exception to the general rule that the manufacturer of a drug owes a duty to warn the consumer directly concerning the risks associated with the drug. The doctrine states that a manufacturer of a *prescription* drug satisfies its duty to provide an appropriate warning about the drug when it gives the patient's physician the necessary information to be disseminated to the patient. The rationale for the learned intermediary rule was stated by the Washington Supreme Court in the case of *Terhune v. A.H. Robins Co.:*

Where a product is available only on prescription or through the services of a physician, the physician acts as a "learned intermediary" between the manufacturer or seller and patient. It is his duty to inform himself of the qualities and characteristics of those products which he prescribes for or administers to or uses on his patients, and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product. The patient is expected to and, it can be presumed, does place primary reliance upon that judgment.... Thus, if the product is properly labeled and carries the necessary instructions and warnings to fully apprise the physician of the proper procedures for use and the dangers involved, the manufacturer may reasonably assume that the physician will exercise the informed judgment thereby gained in conjunction with his own independent learning, in the best interests of the patient.

577 P.2d at 978.

We hold that it was appropriate for the Superior Court to apply the theory of the learned intermediary in this case. A patient obviously is unable to obtain a prescription drug (or a device of this type) unless his physician orders it. When a patient consults with a physician seeking a prescription drug or restricted device, the patient also expects the physician to use his informed independent judgment to advise the patient and to prescribe the most appropriate use of the drug or device, based on his professional judgment. In the final analysis it is the physician who ultimately prescribes the drug or device. Thus, if the manufacturer of prescription products provides the physician with the legally appropriate information, it has satisfied its duty to warn. Lacy must concede that Searle did provide her physician with adequate warnings.

Nonetheless, Lacy contends that the learned intermediary doctrine is inappropriate in view of the facts of this case, because the medical prescription she received was of an "elective" nature and because a patient such as herself has more input into the decision of what contraceptive method to adopt (as compared with prescriptive drugs). Although it may well be true that the insertion of a contraceptive device is a more "elective" type of medical treatment than the consumption of prescriptive medicines[1], and a patient may have considerable input in selecting the device, we do not find that these differences appreciably change the sound reasoning for adopting the learned intermediary doctrine.

In support of her position, Lacy cites cases from only two jurisdictions, Massachusetts and Michigan. *See MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. 131, 475 N.E.2d 65 (1985) *cert. denied*, 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985); *Stephens v. G.D. Searle & Co.*, E.D.Mich., 602 F.Supp. 379 (1985); *Odgers v. Ortho Pharmaceutical Corp.*, E.D. Mich., 609 F.Supp. 867 (1985).[2]

The cases relied on by Lacy concern oral contraceptives. Although there is some va-

---

1. It should be noted that many types of prescriptive drugs could be classified as an "elective". *See, e.g., Samuels v. American Cyanamid Co.*, 130 Misc.2d 175, 495 N.Y.S.2d 1006 (1985) (forty-four year old man had severe reaction to tetanus, typhoid, and cholera vaccines given in preparation for business trip). Moreover, as appellant herself points out, the right of privacy protects "matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349, 362 (1972).

2. It should be noted that the precedential value of the Michigan cases is questionable. In 1984, in reply to certified questions concerning the state of Michigan's law regarding this subject, the Michigan Supreme Court held that there was no law on this subject and declined to decide the issue, holding that the subject was one for the legislature, not the court. *In re Certified Questions*, 419 Mich. 686, 358 N.W.2d 873, 879 (1984), *reh'g denied*, 421 Mich. 1202 (1985). Despite this holding, in 1985 the same district court in the *Odgers* and *Stephens* cases, adopted the dissenting opinion in the *In re Certified Questions* case and predicted that if the issue was again before the Michigan Supreme Court, it would most probably hold that the learned intermediary doctrine does not apply to cases involving oral contraceptives. *See Stephens v. G.D. Searle & Co.*, 602 F.Supp. at 380; *Odgers v. Ortho Pharmaceutical Corp.*, 609 F.Supp. at 878–79. *See also Spychala v. G.D. Searle & Co.*, D.N.J., 705 F.Supp. 1024, 1032 n. 5 (1988).

lidity to the plaintiff's contention regarding the more active role a patient takes in the field of contraception, the majority of jurisdictions nonetheless have applied the learned intermediary doctrine to cases involving oral contraceptives. *See, e.g., Goodson v. Searle Laboratories*, D.Conn., 471 F.Supp. 546 (1978); *Chambers v. G.D. Searle*, D.Md., 441 F.Supp. 377 (1975), *aff'd*, 4th Cir., 567 F.2d 269 (1977); *Ortho Pharmaceutical Corp. v. Chapman*, 180 Ind.App. 33, 388 N.E.2d 541 (1979); *McEwen v. Ortho Pharmaceutical Corp.*, 270 Or. 375, 528 P.2d 522 (1974).

The rationale supporting the learned intermediary doctrine is even stronger when applied to the IUD, as opposed to an oral contraceptive, because not only must the physician order the IUD for his patient, but the physician must also fit the IUD in place. Thus, the patient is required to rely on her physician's expertise whenever an IUD is used. Since the reasons for the learned intermediary doctrine support its application in a case such as this, we hold that it applies. *See Kociemba v. G.D. Searle & Co.*, D.Minn., 680 F.Supp. 1293, 1306 (1988) (applying learned intermediary doctrine to IUD case); *Allen v. G.D. Searle & Co.*, D.Or., 708 F.Supp. 1142, 1147–48 (1989); *Spychala v. G.D. Searle & Co.*, D.N.J., 705 F.Supp. 1024, 1032 (1988); *Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 738 P.2d 1210, 1227–28 (1987).

Lacy also contends that the learned intermediary doctrine cannot apply in this case because a federal regulation explicitly requires that the manufacturer of an IUD provide a direct warning regarding the dangers associated with use of an IUD to the ultimate consumer. 21 C.F.R. § 310.502(b)(2). Lacy concedes that her physician provided her with the patient brochure which Searle included with the IUD. She contends, however, that the patient brochure was not sufficiently informative because unlike the warning sent to the physician, the patient brochure did not state specifically that the patient should not have an IUD inserted within two months of a pregnancy.[3] Lacy contends that the federal requirement of a direct warning renders the rationale of the learned intermediary doctrine inapplicable to this case. We disagree and hold that because Searle did in fact provide an appropriate warning to the consumer, it satisfied the requirement of the federal regulation. Once this requirement is met, the doctrine of the learned intermediary applies and acts to bar any consideration of any alleged deficiency of the warning to the user.

In the case of *Lukaszewicz v. Ortho Pharmaceutical Corp.*, E.D.Wis., 510 F.Supp. 961, *modified on appeal*, 532 F.Supp. 211 (1981), the court held that because federal regulations required the manufacturer of an oral contraceptive to provide warning information regarding possible side effects directly to the user, the manufacturer had to provide the patient with a warning. Relying on the federal regulation, the *Lukaszewicz* court held that the learned intermediary doctrine did not protect a manufacturer from liability if the manufacturer provided *no warning at all* to the contraceptive user. *Id.* at 965.

The holding of the *Lukaszewicz* court is inapposite to the case at hand, however, because in the present case the manufacturer *did* provide a direct warning to the patient. Searle provided a direct warning which was contained in a "patient informa-

---

**3.** The brochure Searle furnished to the physician provided in relevant part:

WARNINGS

5. *Perforation* Partial or total perforation of the uterine wall or cervix may occur with the use of the Cu–7, usually during insertions into patients sooner than the two months after abortion or delivery or in uterine cavities too small for the Cu–7.

In contrast, the brochure Searle furnished to the IUD user provided in relevant part:

*What You Should Tell Your Doctor*

·   ·   ·   ·   ·

Be sure to tell your doctor if you think you are pregnant [.] ... Also if you have just had a baby or an abortion your doctor probably won't want to put an IUD in for you[.] Because the tissue is very soft at this time, there would be a greater chance that the doctor might push the IUD through the uterine wall during the insertion[.] ... Be patient[.] When your uterus has returned to a normal condition so that the IUD can be inserted with minimal chance of perforation, expulsion or infection, your doctor will tell you....

tion" brochure which accompanied the IUD.[4] It is clear that Searle's patient information brochure complied with the applicable federal regulations and was approved by the Food and Drug Administration ("FDA"). We find that Searle satisfied the requirement of the federal regulations to provide a direct patient warning.

The judgment of the Superior Court is affirmed.

---

**4.** The brochure accompanying the IUD that Searle sent to physicians provided in relevant part:

*Precautions*

1. *Patient counseling* Prior to the insertion the physician, nurse, or other trained health professional must provide the patient with the

Patient Brochure. The patient should be given the opportunity to read the Patient Brochure. The patient should be given the opportunity to read the brochure and discuss fully any questions she may have concerning the Cu–7 as well as other methods of contraception.