**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 20 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

ALPHA EDWARDS, Personal
Representative of the Estate of John T.
Edwards, deceased,

      Plaintiff-Appellant,

v.

BASEL PHARMACEUTICALS, a
division of Ciba-Geigy Corporation,

      Defendant-Appellee.

------------------------------------------------

PHARMACEUTICAL RESEARCH
AND MANUFACTURERS OF
AMERICA,

      Amicus Curiae.

No. 95-6176

---

ORDER

---

Before ANDERSON and BARRETT, Circuit Judges.[*]

---

[*]     The late Honorable Oliver Seth, United States Senior Circuit Judge, passed away before final disposition of this appeal. "The practice of this court permits the remaining two panel judges if in agreement to act as a quorum in resolving the appeal." United States v. Wiles, 106 F.3d 1516, 1516 n.* (10th Cir. 1997), petition for cert. filed, 65 U.S.L.W. 3632, (U.S. Mar. 10, 1997) (No. 96-1430).

This matter is before the court on a petition for rehearing with suggestion for rehearing en banc filed by defendant-appellee Basel Pharmaceuticals. For the reasons stated below, the hearing panel has concluded its original disposition was correct, and the remaining judges of the court in active service have rejected the en banc suggestion. Some background is necessary for a full understanding of the procedural and substantive deficiencies of the petition.

I

Plaintiff Alpha Edwards brought this wrongful death action after her husband suffered a fatal heart attack while smoking cigarettes and wearing two of Basel's "Habitrol" nicotine patches. Her theory of liability was Basel's failure to warn of the risks of nicotine overdose resulting from smoking and (over)use of the patch. While a relatively thorough warning, specifically noting the fatal risk realized here, was included in materials intended for the prescribing physician, a package insert addressed to the patient failed to mention the possibility of any fatal reaction to nicotine overdose, cautioning only that "[a]n overdose might cause you to faint." Appellant's Appendix (App.) at 45.

Basel moved for summary judgment on the ground that, pursuant to the "learned intermediary rule" (LIR) recognized in Oklahoma, see, e.g., Tansy v. Dacomed Corp., 890 P.2d 881, 886 (Okla. 1994), its duty to warn ran solely to the prescribing physician, who was apprised of the danger involved. Plaintiff

-2-

countered that the case fell within a recognized exception to the LIR, applicable

when "the FDA has mandated that warnings be given to the patient as well as to

the physician." McKee v. Moore, 648 P.2d 21, 25 (Okla. 1982). Basel, which

represented that "the patient insert as well as the Information to Physician were

both mandated and approved by the FDA," App. at 54 n.7, contended that its

compliance with the FDA mandate precluded any liability premised on inadequate

patient warnings. The district court granted summary judgment for Basel.

On appeal, the parties reasserted the positions they had urged in the district

court. We recognized that the case, as framed by the foregoing proceedings,

raised an unsettled question regarding the relationship between a *satisfied* FDA

mandate[1] and the LIR:

> Although Oklahoma courts have acknowledged the
> FDA-mandate exception, they have never had the occasion to
> consider the effect of the manufacturer's compliance with the very
> agency mandate on which the exception rests. The courts that have
> considered the issue have followed two very different lines of
> analysis which, though mutually exclusive, appear internally
> consistent and sound.
>
> Some courts have held that the LIR, itself an exception to the
> manufacturer's traditional duty to warn consumers directly of the
> risks associated with any product, simply drops out of the calculus,

---

[1]     We noted that "[a]lthough the operative administrative regulation, directive, or stipulation was never produced," the FDA mandate for direct patient warnings and Basel's compliance therewith were admitted and uncontroverted. Edwards v. Basel Pharmaceuticals, No. 95-6176, Certification of State Law Question (Certification Order), at 2-3 (10th Cir. Feb. 28, 1996).

leaving the duty of the manufacturer to be determined in accordance with general principles of tort law. See, e.g., Odgers v. Ortho Pharmaceutical Corp., 609 F. Supp. 867, 877-79 (E.D. Mich. 1985); Martin ex rel. Martin v. Ortho Pharmaceuticals, 645 N.E.2d 431, 436-37 (Ill. Ct. App. 1994); MacDonald v. Ortho Pharmaceutical Corp., 475 N.E.2d 65, 69-71 (Mass.), cert. denied, 474 U.S. 920 (1985). Pursuant to such principles, traditional standards involving reasonableness govern the adequacy of warnings and, hence, compliance with a nonpreemptive and "minimal" FDA mandate (in particular, the one negating the LIR) is at most inconclusive evidence of adequacy. Odgers, 609 F. Supp. at 879; Martin, 645 N.E.2d at 437; MacDonald, 475 N.E.2d at 70.

Other courts have held that the LIR remains operative, thus barring reversion to general duty principles, and yields only to the extent of the FDA mandate, which carves out--and thereby delimits--an exceptional, exclusive duty owed directly to the consumer. Once this overriding mandate is met, the LIR "applies and acts to bar any consideration of any alleged deficiency of the warning to the user." Lacy v. G.D. Searle & Co., 567 A.2d 398, 401 (Del. 1989); accord Spychala v. G.D. Searle & Co., 705 F. Supp. 1024, 1032-33 (D.N.J. 1988). Under this view, the minimal, nonpreemptive character of FDA-mandated requirements is simply not a consideration, because it is the LIR, not compliance with the FDA mandate, that, strictly speaking, precludes the common law consumer-warning claim.

Certification Order at 3-4. We summarized the pertinent facts of record and certified the following question to the Oklahoma Supreme Court:

Under Oklahoma law, what determines the scope or extent of the prescription drug manufacturer's duty to warn the consumer when FDA recognition of the need for direct warnings has undercut application of the learned intermediary rule? More specifically, what is the effect of the manufacturer's compliance with the very FDA requirements invoking this exception to the rule?

Id. at 1.

-4-

In due course, the supreme court supplied its answer, supporting the viability of plaintiff's claim for inadequate consumer warnings:

> We hold that when the FDA requires warnings be given directly to the patient with a prescribed drug, an exception to the "learned intermediary doctrine" has occurred, and the manufacturer is not automatically shielded from liability by properly warning the prescribing physician. When this happens the manufacturer's duty to warn the consumer is not necessarily satisfied by compliance with FDA minimum warning requirements. The required warnings must not be misleading, and must be adequate to explain to the user the possible dangers associated with the product. Whether that duty has been satisfied is governed by the common law of the state . . . .

Edwards v. Basel Pharmaceuticals, 933 P.2d 298, 303 (Okla. 1997).

Implementing this definitive pronouncement of controlling state law, we issued an order and judgment reversing the district court insofar as it had granted summary judgment for Basel on plaintiff's consumer warning claim: "The district court has never considered the adequacy of Basel's consumer warnings under the common law of Oklahoma. Accordingly, summary judgment must be reversed and the case remanded for further proceedings on that issue, consistent with the principles expressed by the state supreme court." Edwards v. Basel Pharmaceuticals, No. 95-6176, 1997 WL 158134, at **1 (10th Cir. Apr. 2, 1997). With respect to "plaintiff's analytically separate claim that Basel (also) did not adequately warn the decedent's prescribing physician," however, we affirmed, agreeing with the district court that plaintiff had offered no affirmative evidence

-5-

to dispute Basel's showing that the information provided to the prescribing physician was accurate, appropriate, and complete.  Id.

One month later, Basel filed the instant petition objecting to the content of our certified question and to our implementation of the supreme court's answer. Basels' primary argument on rehearing runs as follows: the record failed to establish the particular source and content of the FDA mandate involved; because of this evidentiary gap, our question improperly *assumed* a mandate for direct patient warnings sufficient to undercut the LIR; and, finally, this deficiency in the question left the supreme court's answer inapplicable to our facts.  As a secondary matter, Basel argues that our question was inconsistent with a factual determination made by the district court.

## II

Before addressing the merits of Basel's petition, it is important to note its procedural inappropriateness.  Basel (1) unequivocally and unqualifiedly represented to the district court that its monitory patient insert was mandated by the FDA; (2) responded to plaintiff's resultant FDA-mandate argument *not* by retracting or qualifying that admission, but by relying on the accompanying representation, also uncontroverted, that it had satisfied the admitted mandate; and (3) did not object in any way to our certification order, which posed the sole question raised by its own broad representations and argument on the

-6-

FDA-mandate question. Only now, after the supreme court has provided an unfavorable answer and we have remanded for further proceedings in accordance therewith, does Basel raise any objection regarding the nature of the mandate referred to in the certified question. Further, Basel's challenge to our subsequent order and judgment implementing the supreme court's answer is, in essence, really an indirect objection to the premises underlying our certified question, premises which, as noted, Basel supplied at the outset and never called into doubt until now.

To say the least, then, Basel's present protests are mistimed. Indeed, even putting aside the connection to the year-old certification order and considering the petition solely in connection with our subsequent order and judgment, it is still plainly late, see Fed. R. App. P. 40(a) (specifying fourteen days for filing petition for rehearing), and Basel has not offered any excuse for its untimeliness. Our following discussion and rejection of the petition on the merits is intended to facilitate the proceedings on remand, which otherwise might be complicated needlessly by some of the same contentions; we do not thereby condone the procedural course followed here.

**III**

Basel objects that our certified question did not identify the particular source of the FDA mandate involved (an omission its own broad representations and subsequent silence necessitated) and therefore improperly assumed a mandate sufficient to trigger Oklahoma's exception to the LIR. However, we did not mislead the Oklahoma Supreme Court on this point; on the contrary, we carefully explained that our certified question was based solely on Basel's general representation that its patient insert had been mandated and approved by the FDA *because* "the operative administrative regulation, directive, or stipulation was never produced." Certification Order at 2. Hence, all that can be said is the supreme court provided a broader answer than it might have had we been able to offer restrictive details of the FDA mandate involved--an answer indicating that the distinctions Basel now wishes to draw, making the availability of the FDA-mandate exception turn on the administrative context or format of the particular mandate involved, played no part in the court's analysis of the drug manufacturer's duty to warn. Indeed, the court stated its holding with reference to generic FDA "requirements." Edwards, 933 P.2d at 303.

In short, the supreme court focused on the *existence* of a mandate for direct patient warnings, without qualification as to regulatory source, content, or form, and evinced no compunction about applying the FDA-mandate exception to the

circumstances of this case, in which, as we had fully explained, such details were lacking. Accordingly, we find no support for Basel's present contentions that our certified question was improper or that this case may involve some inferior sort of mandate outside the scope of the duty analysis set out in the supreme court's answer.

The thrust of that duty analysis may be further clarified in response to two objections advanced by amicus Pharmaceutical Research and Manufacturers of America (PRMA).[2] PRMA argues that, contrary to our certified question and the supreme court's answer, "the FDA has expressly stated that patient package inserts are not intended to affect adversely the *standard* of civil tort *liability* which is imposed on drug manufacturers and dispensers, or to *define the duty or set the standard of care* manufacturers owe to the patient who uses the product." Amicus Curiae Brief at 8 (citations omitted and emphasis altered). As the emphasized terms betray, PRMA is actually complaining about a decision no one has made yet, regarding the requisite *content* of the manufacturer's consumer warnings. Specifically, PRMA is concerned about preserving the independence between state tort warning standards and particular patient labels or inserts the FDA has mandated/approved. This has nothing to do with the analytically prior

---

[2] We grant PRMA's motion to file the amicus curiae brief submitted in conjunction with Basel's petition for rehearing.

question of duty *vel non* posed in our certification order. Indeed, the Oklahoma Supreme Court's answer--that the duty recognized here is not necessarily satisfied by compliance with the FDA mandate triggering it--effectuates precisely the content-independence referred to in the quoted passage.[3]

PRMA displays a similar confusion in arguing that we have mistaken the Habitrol patient insert for a "comprehensive warning" when it is just a "lay" admonition meant merely to complement the more exhaustive information provided to the prescribing physician. The Oklahoma Supreme Court was well aware of the difference between the prescribing physician's materials and the patient insert, see Edwards, 933 P.2d at 299, but this difference did not affect its determination that an agency mandate requiring that *some* cautionary information be given directly to the patient precluded reliance on the LIR. Again, PRMA confuses the conditions creating Basel's duty to warn with considerations relating to the content/satisfaction of that duty, a matter that simply has not been reached yet. See id. at 303 (recognizing Basel's duty to warn consumer, but explaining "[w]hether that duty has been satisfied [under] the common law of the state . . . [is] beyond our assignment in response to this certified question"); Edwards, 1997 WL 158134, at **1 (this court's order and judgment remanding to the district

---

[3] Moreover, whether the FDA disclaims any intent to affect state tort duties (as to content or existence) is irrelevant to the controlling question whether a particular state has chosen to rely on FDA mandates for such purposes.

court, which "has never considered the adequacy of Basel's consumer warnings under the common law of Oklahoma"). Thus, some of what PRMA has to say may be relevant to assessing the adequacy of Basel's consumer warnings, but it is not pertinent to the analytically prior decision, dispositive of this appeal, that Basel had a common law duty to provide such warnings.

Finally, Basel contends our disposition is inconsistent with the district court's statement that it "agrees with defendant that plaintiff has not shown that the [FDA] mandated that warnings with respect to the Habitrol System be given to the patient directly." App. at 71 n.1. On its face, this statement merely acknowledges that plaintiff did not present her own evidence of FDA-mandated warnings--a fact of no analytical significance given that the necessary mandate was admitted by Basel. Moreover, if the district court intended to hold, as a matter of law, that no FDA mandate existed, that holding would be plainly in error, as the only evidence on the question is Basel's unqualified admission of such a mandate. Actually, in light of the district court's initial expression of "agree[ment] with defendant," it evidently was not making either of these points, but simply accepting Basel's argument that, given Basel's uncontroverted compliance with the (admitted) FDA mandate, plaintiff had presented no evidence of any FDA-mandated patient warning *that Basel had not given*, and, consequently, there could be no liability based thereon. While a reasonable

enough approach given the blank slate the district court was writing on at the time, that is precisely the legal position now rejected by the Oklahoma Supreme Court in response to our certified question. Obviously, the district court's contrary assessment of the governing state law cannot preempt or undermine the supreme court's definitive pronouncement thereof.

The petition is DENIED.