THOMAS M. SHELTON, III, ALAN CRAIG SHELTON AND GEORGE C. COL-LIE, SUCCESSOR TRUSTEE OF THE TRUST OF THOMAS M. SHELTON, DECEASED, PLAINTIFFS v. FRANCIS H. FAIRLEY, INDIVIDUALLY AND AS EXECUTOR OF THOMAS M. SHELTON, DECEASED; FRANCIS H. FAIRLEY, S. DEAN HAM-RICK, JAMES D. MONTEITH AND LAURANCE A. COBB, INDIVIDUALLY AND AS FAIRLEY, HAMRICK, MONTEITH & COBB, A NORTH CAROLINA PARTNER-SHIP, DEFENDANTS, AND LOIS HOLT SHELTON WILSON AND CATHERINE NORELL SHELTON EINHAUS, ADDITIONAL DEFENDANTS

No. 8626SC1225

(Filed 16 June 1987)

1. **Appeal and Error § 6.2— partial summary judgment—immediately appealable**

In an action for negligence and malpractice against the executor of an estate and attorneys for the executor, the trial court's judgment dismissing plaintiffs' claims of punitive damages against all defendants and dismissing claims against the former law partners of Francis Fairley for acts in his capaci-ty as executor of the estate were immediately appealable where plaintiffs had a substantial right to have all of their claims for relief tried at the same time before the same judge and jury. N.C.G.S. § 1A-1, Rule 54(b).

2. **Partnership § 5— liability of law partners for acts of one partner as executor of estate**

The trial court did not err by granting summary judgment for defendants on the issue of their liability as law partners for the acts of Francis Fairley as executor of an estate where the evidence did not show that the partnership engaged in the administration of the estate or ratified Fairley's activities as executor. Although the firm had a pecuniary interest in the executor's fees, the interest was indirect and the fact that it would be difficult for a jury to distinguish Fairley's decisions as executor from those as attorney for the estate does not support the argument that defendants should be held deriv-atively liable for their partner's acts. Juries have long performed the duty of unraveling difficult issues of fact. N.C.G.S. § 84-2.1.

3. **Damages § 11.2— derivative liability—dismissal of punitive damages claim—proper**

The trial court did not err by dismissing plaintiffs' claims for punitive damages against the law partners of the executor of an estate where the evi-dence showed that any liability on the part of those three defendants was de-rivative. The purpose of punitive damages would not be achieved by allowing recovery against those derivatively liable.

APPEAL by plaintiffs from *Kirby, Judge.* Judgment entered 27 August 1986 in MECKLENBURG County Superior Court. Heard in the Court of Appeals 8 April 1987.

Plaintiffs filed this action on 30 July 1982. Plaintiffs Thomas M. Shelton, III and Alan Craig Shelton are beneficiaries of the

estate of Thomas M. Shelton, who died on 7 August 1974. George W. Collie is successor trustee under a testamentary trust. The suit was originally brought against Francis H. Fairley, individually and as executor of the Shelton estate, his law firm, and the law firm partners individually. Fairley died on 12 December 1983, and his executrix was substituted as a party defendant.

In their claims for relief, plaintiffs sought compensatory and punitive damages for breach of fiduciary duties, negligence in management of the estate and malpractice against the executor and attorneys for the executor arising from the administration of the estate of Thomas M. Shelton and from legal work performed for the estate.

On 11 February, defendants filed an answer and a motion to dismiss for insufficiency of service of process, res judicata and collateral estoppel. The Honorable Kenneth A. Griffin granted defendants' motions and dismissed with prejudice each of plaintiffs' claims. Plaintiffs appealed, and on 18 December 1984, the Court of Appeals affirmed in part, reversed in part and remanded. *Shelton v. Fairley*, 72 N.C. App. 1, 323 S.E. 2d 410 (1984), *disc. rev. denied*, 313 N.C. 509, 329 S.E. 2d 394 (1985).

The parties engaged in discovery, and on 30 July 1986, defendants filed a motion for summary judgment. On 27 August 1986, Judge Kirby allowed partial summary judgment for the defendants, dismissing all claims of punitive damages against all defendants and dismissing the claims against the former law partners for the acts of Fairley in his capacity as the executor of the estate. Plaintiffs appealed.

*George C. Collie and Charles M. Welling, for plaintiffs-appellants.*

*Golding, Crews, Meekins & Gordon, by John G. Golding and Rodney Dean, for defendants-appellees Hamrick, Monteith & Cobb.*

*Horack, Talley, Pharr & Lowndes, by Robert C. Stephens and Robert B. McNeill, for defendant-appellee Estate of Francis H. Fairley.*

WELLS, Judge.

[1] As the judgment below is not final as to all claims and all parties, *see* N.C. Gen. Stat. § 1A-1, Rule 54(b) of the Rules of Civil Procedure, our first question is whether the trial court's judgment dismissing plaintiffs' claims of punitive damages against all defendants and dismissing claims against the former law partners for the acts of Mr. Fairley in his capacity as executor of the estate are immediately appealable. Pursuant to the rule established in *Oestreicher v. Stores*, 290 N.C. 118, 225 S.E. 2d 797 (1976), we find that plaintiffs have a substantial right to have all of their claims for relief tried at the same time before the same judge and jury, and therefore allow this appeal.

[2] Plaintiffs first contend that the court erred in granting summary judgment for defendants on the issue of the partners' liability for the acts of Mr. Fairley in his capacity as executor. Plaintiffs argue that those activities were within the course and scope of the practice of law, that Fairley was the agent of the law firm in his activities as executor, and that Fairley's partners are liable for such acts. We disagree.

Upon motion of summary judgment, a trial court must consider pleadings, affidavits and depositions in order to determine whether the movant has met his burden of proof, as set out in establishing the absence of any triable issue. N.C. Gen. Stat. § 1A-1, Rule 56 of the Rules of Civil Procedure. The evidence must be viewed in the light most favorable to the non-movant in determining whether movant has (1) proved that an essential element of the opposing party's claim is nonexistent, or (2) shown through discovery that the opposing party cannot produce evidence to support an essential element of his claim. If the moving party satisfies his burden of proof, then the burden shifts to the non-moving party to show that there is a genuine issue of material fact. An issue is "genuine" if there is substantial evidence to support it. *Lowe v. Bradford*, 305 N.C. 366, 289 S.E. 2d 363 (1982); *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974).

The general rule regarding derivative liability of a partnership is set out in G.S. § 59-43:

Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partner-

ship or with the authority of his co-partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

These rules regarding partnership tort liability are fully applicable to law partnerships. *Jackson v. Jackson*, 20 N.C. App. 406, 201 S.E. 2d 722 (1974). The question we must decide in this case is whether acting as executor for an estate falls within the scope of the practice of law, and therefore within the scope of the authority of Fairley as a member of the law firm. *See Zimmerman v. Hogg and Allen, supra.*

The partners in the case at bar apparently did not draw up a partnership agreement. However, the pleadings establish the fact that the partnership exists for the primary purpose of carrying on the practice of law within the State of North Carolina. The practice of law is itself defined in N.C.G.S. § 84-2.1:

> The phrase "practice law" as used in this Chapter is defined to be performing any legal service for any other person, firm or corporation, with or without compensation, specifically including the preparation or aiding in the preparation of deeds, mortgages, wills, trust instruments, inventories, accounts or reports of guardians, trustees, administrators or executors, or preparing or aiding in the preparation of any petitions or orders in any probate or court proceeding; abstracting or passing upon titles, the preparation and filing of petitions for use in any court, or assisting by advice, counsel, or otherwise in any such legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation: Provided, that the above reference to particular acts which are specifically included within the definition of the phrase "practice law" shall not be construed to limit the foregoing general definition of such term, but shall be construed to include the foregoing particular acts, as well as all other acts within said general definition.

As this definition neither includes nor excludes acting as executor for an estate, we turn to the decisions of our appellate courts for guidance.

In *Jackson v. Jackson, supra*, this Court considered the question of whether all partners in a law firm were liable for a malicious prosecution instituted on the advice of one of the partners. We found that, although criminal prosecution was "clearly within the normal range of activities for a typical law partnership," such action taken maliciously was beyond the scope of the partnership business. Since the other partners did not further authorize, participate in or even know about his actions, this Court upheld summary judgment for defendants. *See also Investors Title Ins. Co. v. Herzig*, 83 N.C. App. 392, 350 S.E. 2d 160 (1986).

Two North Carolina cases address the liability of members of an incorporated law firm. In *Zimmerman v. Hogg & Allen, supra*, Mr. Greene, the president of his incorporated law firm, did considerable legal work for Holly Farms, Inc. Zimmerman, an officer of Holly Farms, had given Greene money with the understanding that it would be invested in a certain stock. Zimmerman never received his stock, and he sued for delivery of the stock or its value. The trial court granted summary judgment for defendant law firm, and our Supreme Court reversed:

> It is reasonable to infer from this evidence that the investment services rendered by Greene to the employees of Holly Farms might have been for the purpose of obtaining the good will of the corporation to insure the continuance of a profitable association between the corporate client and the Professional Association. This inference would suggest a striking analogy to the practice of receiving funds for investment in order to generate fees for drawing legal instruments, a practice which has been recognized by both our courts and the English courts as being within the scope of the usual practice of law.

> The evidence in this case, when construed most indulgently in plaintiff's favor, as Rule 56 requires, tends to show that the powers granted to the Professional Association by its charter were very broad powers, the exercise of which was principally in the hands of Greene; that defendant Greene, while he was on business trips to attend to the legal business of Holly Farms accepted funds for investment purposes from employees of the corporate client; that these cor-

porate employees were assured that such moneys would be handled through the Professional Association; that such activities by Greene, the president and principal stockholder of the Professional Association, had occurred over a period of several years; and that other employees of the Professional Association had knowledge of such dealings.

Under these particular circumstances, we are of the opinion that plaintiff's evidence was sufficient to justify a reasonable and prudent belief by plaintiff Sam Zimmerman that the Professional Association had conferred authority upon Greene to receive the funds from him for investment while acting as its agent. Thus plaintiff's evidence raised a genuine material issue for trial as to whether Greene acted within the scope of his authority and as agent for the Professional Association at the times complained of. The issue so raised was material because without establishing agency, plaintiff could not recover, and the issue was genuine because it could be supported by substantial evidence.

*Id.*

In *McGarity v. Craighill, Rendleman, Ingle & Blythe, P.A.*, 83 N.C. App. 106, 349 S.E. 2d 311 (1986), *disc. rev. denied*, 319 N.C. 105, 353 S.E. 2d 112 (1987), this Court distinguished *Zimmerman* from the case before it. In *McGarity*, plaintiffs sued an incorporated law firm for damages for two acts of conversion by Mr. Clarkson, a former member of the firm. Plaintiffs alleged that Clarkson was an agent of the firm, and was acting within the apparent scope of his authority when he solicited and accepted the loans, thus making the firm liable for his conversion of the loans. This Court disagreed, holding that:

In the present case, plaintiffs have not presented enough evidence to raise a genuine issue of material fact as to whether Mr. Clarkson was acting within the scope of his apparent authority when he solicited and accepted the money from the McGaritys. The firm was not in the business of soliciting or accepting money for investment purposes, and there is no evidence that it had ever done so. The firm was not authorized to do so by its articles of incorporation. There is no evidence that Mr. Clarkson's acts could have benefitted the firm in any way. There is no evidence that any other

member of the firm knew or should have known about Mr. Clarkson's soliciting and accepting the money. Thus the firm could not have committed any acts to hold Mr. Clarkson out as having the authority to do so. Therefore, there was no such authority, under the principle that the scope of an agent's apparent authority is determined by the acts of the principal, not the agent.

Although such cases, as the Court in *Zimmerman* noted, turn largely on the facts, the basic principles may be summarized as follows. In order to determine whether members of a firm should be held liable for the activities of one of its partners, the court should consider (1) the provisions of the instrument empowering the firm to practice law, such as partnership agreements and articles of incorporation, as well as statutory provisions; (2) the construction which our courts have historically given the questioned activity or related ones; (3) whether the partner has acted, or seemed to act, with the firm's authority; this includes his position in the firm, the participation — if any — by the rest of the firm in the disputed activities, and any assurances given the client that this transaction would be handled through the firm. Finally, (4) we must consider whether the other members of the firm have assented to or ratified the acts.

In order to apply these principles to the case at bar, we must review the forecast of evidence presented at the summary judgment hearing. Defendants first offered affidavits in support of their motion:

The affidavits of S. Dean Hamrick, James D. Monteith, and Laurence A. Cobb show:

1. All Executor's fees paid to Francis H. Fairley as Executor of the Estate of Thomas M. Shelton were retained by Mr. Fairley, individually, and none of the Executor's fees were received as legal fees by the law firm of Fairley, Hamrick, Monteith & Cobb.

2. A portion of the Executor's fees paid at the time the final award of fees was made was used to reimburse the law firm for legal fees advanced by it for Mr. Fairley, but no part of the fees paid to the Executor in any way was for the benefit of the law firm of Fairley, Hamrick, Monteith & Cobb.

3. The law firm of Fairley, Hamrick, Monteith & Cobb never undertook to act as Executor of the Shelton Estate and the acts by Mr. Fairley as Executor of the Estate were performed by him individually and not as a member of the law firm.

Defendants also offered part of the deposition of George W. Collie, which established that plaintiffs did not intend to offer any evidence that the partners were in any way liable except derivatively. This evidence shows that Fairley was acting only in his individual capacity in his role as executor and was sufficient to show the absence of one of the essential elements of plaintiffs' claim.

Plaintiffs, attempting to rebut this evidence, offered part of the deposition testimony of S. Dean Hamrick. That testimony, in pertinent part, is as follows:

Q. In your partnership arrangement as it relates to Mr. Francis H. Fairley, the executor in this estate, you've already told me that you share in the profits of what Mr. Fairley generates, according to some percentage which I'm not interested in, and you indicated a moment ago that you personally have no financial or pecuniary interest in Mr. Fairley's commissions as executor in this Thomas Shelton Estate. Is that correct?

A. Under the arrangement, I have no direct interest in the commissions. There would be an indirect interest—

Q. Would you explain that?

A. I think in the overall division the amount of commissions would be taken into consideration but not on a direct basis, only the legal fees.

Q. Would you explain to me what you mean by that? I don't understand.

A. Well, if there is a substantial commission received, we would take that into consideration in determining the amount of the way the legal fees would be divided up. But, it's not a direct relationship.

Q. Well, let's suppose for purposes of trying—bear with me; help me understand what you're saying. If there's $1.00

of commissions received by Mr. Fairley and $1.00 of attorney's fees, are you saying that you might receive some of the commissions if it were $1,000,000.00 executor's commissions and $1,000,000.00 attorney's fees as opposed to $1.00?

A. Yes—Well, I think you could say that we would have an interest in commissions.

Q. We being you, Hamrick, and the other partners?

A. Right.

Q. So, then your answer is you have a pecuniary interest, in the amount of executor's fees that Mr. Fairley might receive in this estate?

A. Yes, I think that would be a fair statement.

Even taking this evidence, together with plaintiffs' verified complaint, in the light most favorable to plaintiffs, we find that it does not show that the partnership engaged in the administration of the estate or authorized or ratified Fairley's activities as executor. We find no precedent for bringing a law partner's activities as executor within the purview of the practice of law. Although Mr. Hamrick's deposition did tend to show that the firm had a pecuniary interest in the executor's fees, it is clear that the interest was indirect. We find persuasive defendants' argument that, if Mr. Fairley received a large amount of executor's fees in a given period of time, the other partners would get a bigger share of the firm's income because of the time Mr. Fairley took from his legal work in order to fulfill his function as executor. "The mere fact that partnership ultimately benefits from a contract made by a partner in his own name does not create a partnership obligation," *Brewer v. Elks*, 260 N.C. 470, 133 S.E. 2d 159 (1963), and where, as here, a firm benefitted indirectly from a partner's position as executor undertaken in his individual capacity, that benefit alone is not sufficient to establish partnership liability for those activities.

Plaintiffs present an ancillary argument in support of their position that defendants should be held derivatively liable for their partner's acts in his capacity as executor: Plaintiffs contend that the difficulty in distinguishing Fairley's decisions made as executor from those made as attorney for the estate present an

intolerable burden for both plaintiffs and jury. However, juries have long performed the duty of unraveling difficult issues of fact, and we find no reason to prevent them from performing that duty here. Also, as defendants concede, the jury should be instructed to find that Fairley acted as attorney if it finds that the functions were mixed in a particular instance.

Before we turn to plaintiffs' next argument, we note that they chose not to pursue on this appeal the following assignment of error:

> 1. To the court's granting the defendants' motion for summary judgement [sic] that all claims for punitive damages against Doris M. Fairley, Executrix of the estate of Francis H. Fairley, be dismissed with prejudice.

In accordance with Rule 28(a) of the N.C. Rules of Appellate Procedure, we deem this assignment to be abandoned. *See Baker v. Log Systems, Inc.*, 75 N.C. App. 347, 330 S.E. 2d 632 (1985).

**[3]**  In their second and final argument, plaintiffs contend that the court erred in dismissing all claims for punitive damages against defendants Hamrick, Monteith and Cobb. We disagree. The deposition of George C. Collie established that no evidence would be offered at trial to show that Hamrick, Monteith or Cobb committed any acts which would subject them to a personal claim for punitive damages. Thus, any liability on the part of these three defendants, individually and as a firm, must be derivative. This Court has ruled that punitive damages may not be recovered from the estate of a deceased tort-feasor, no matter how aggravated the circumstances. *Thorpe v. Wilson*, 58 N.C. App. 292, 293 S.E. 2d 675 (1972). The rationale of such a rule is that "the sole purpose for allowance of punitive damages is to punish the wrongdoer," *id.*; there, as here, such purpose could not be achieved by allowing recovery against those derivatively liable. The punitive damage claim was properly dismissed, and this assignment is overruled.

The judgment appealed from is

Affirmed.

Judges ARNOLD and ORR concur.