Jeffrey WINANT; Doree M. Gerold, Plaintiffs–Appellees,

v.

Marlowe F. BOSTIC; F. Roger Page, Defendants–Appellants,

and

Peter P. Green, III; Patricia F. Green, Defendants.

Robert T. DeSMEDT; Dale S. DeSmedt, Plaintiffs–Appellees,

v.

Marlowe F. BOSTIC; F. Roger Page, Defendants–Appellants,

and

Peter P. Green, III; Patricia F. Green, Defendants.

James N. STANARD; Janet G. Stanard; John S. Donnell, Plaintiffs–Appellees,

v.

Marlowe F. BOSTIC; F. Roger Page, Defendants–Appellants.

Nos. 92–1975, 92–1976 and 92–2164.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1993.

Decided Sept. 27, 1993.

---

Roy Connelly Bain, Wilmington, NC; Harrell Powell, Jr., Law Offices of Harrell Powell, Jr., Winston–Salem, NC, argued (Mary Elizabeth Wertz, Wilmington, NC, on the brief), for defendants-appellants.

Gary Keith Shipman, Joel Robert Rhine, Shipman & Lea, Wilmington, NC, argued, for plaintiffs-appellees.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WIDENER and NIEMEYER, Circuit Judges.

## OPINION

NIEMEYER, Circuit Judge:

Marlowe F. Bostic and F. Roger Page undertook the development of approximately 18 acres of oceanfront property in Onslow County, North Carolina, calling their project

Ocean Ridge Village. The project, consisting of 88 individual homesites and common areas, was advertised and marketed as a "world class resort by the sea." Contending that Bostic and Page misrepresented material aspects of the project and made false promises, purchasers Jeffrey Winant & Doree Gerold, Robert & Dale DeSmedt, James & Janet Stanard, and John Donnell brought four separate actions against Bostic and Page. These actions, brought in federal court by virtue of diversity jurisdiction, alleged fraud, deceptive trade practices in violation of a North Carolina statute, and breach of contract.

The actions filed by Winant & Gerold and the DeSmedts were consolidated for trial, and a jury returned a verdict in their favor on all counts, awarding compensatory and punitive damages. The actions filed by the Stanards and Donnell were likewise consolidated for trial, and a different jury returned a verdict in their favor on all counts. It awarded restitution but no punitive damages. Applying N.C.Gen.Stat. § 75–16, the district court trebled the restitutionary awards and entered judgments in favor of the Stanards and Donnell for three times the amount of their respective investments. These appeals followed.

On appeal, Bostic and Page challenge evidentiary rulings by the district court in both trials, and they contend that the evidence was insufficient to support the verdicts. With respect to punitive damages awarded in the first trial, they argue that the jury was given "unlimited discretion" in reaching a monetary amount, thereby denying them due process of law. Additionally, Page contends that he should not be held vicariously liable for punitive damages simply because he was Bostic's partner when the evidence was insufficient to show that he personally participated in the fraud. With respect to the second trial, Bostic and Page contend that it was error for the district court to treble a restitutionary award when the North Carolina statute provides that only damages be trebled.

Because these appeals arise out of the same nucleus of facts and raise similar issues, we resolve them together in this opinion. As we explain below, we vacate the judgment in favor of the Stanards and Donnell, reversing only the amount added by the district court's trebling of the restitutionary awards, since those awards represent the restitution of the total amounts *invested* by the purchasers in Ocean Ridge Village and not damages. In all other respects, we affirm.

I

Bostic and Page as partners undertook to develop Ocean Ridge Village, intending it to be a luxury, oceanfront, single family residential community consisting of 88 lots in Onslow County, North Carolina. To attract "high-end" buyers, they promised to include various common areas and amenities, including a swimming pool and club house, croquet lawns, "exotic" landscaping, walkway areas, designer lighting along the walkways, sprinkler and irrigation systems, beach access areas, proper drainage facilities, concrete driveways, and parking areas. Bostic employed Fred C. Hayler as an agent responsible for selling the lots.

In response to those who expressed interest in purchasing lots at Ocean Ridge Village, Bostic and Page sent attractive brochures and other materials that contained aerial drawings and maps, with a swimming pool and croquet lawns marked, and plans for different house styles. Ocean Ridge Village was compared favorably with resorts such as Hilton Head and touted as a development of the "highest quality," a "paradise with all the amenities," and "a world-class resort by the sea."

In April 1988 after Winant and Gerold contracted to purchase a lot in Ocean Ridge Village, they traveled to North Carolina to meet with the sales agent, Hayler, who told them that Page and Bostic "were two of the richest people in North Carolina" and that Bostic was a highly knowledgeable and experienced land developer. Hayler assured Winant and Gerold that "environmental permits" were in place and that the common areas and amenities would be completed quickly, with a substantial portion of the project to be done by late 1988.

Also in April 1988 the Stanards contracted to purchase four lots in Ocean Ridge Village. At that time, James Stanard inspected the site with Hayler. Although no construction had yet begun, Hayler showed Stanard the location of the lots, the swimming pool, and the main complex, and he assured Stanard that all permits had been obtained. In August 1988 the Stanards closed on the purchase of six additional lots.

In February 1989 Robert DeSmedt visited Ocean Ridge Village where Hayler told DeSmedt that "all the utilities are in. Everything's ready to go. We've got environmental permits." DeSmedt and his wife closed on the purchase of a lot in March 1989.

John Donnell toured Ocean Ridge Village with Hayler in January 1990, after responding to an advertisement and receiving a brochure and other materials. Hayler told him of the amenities to be built and assured him that all necessary permits were in place. Hayler also showed Donnell the neighboring golf course and country club, the construction of which Page had been involved in and in which Donnell would receive a life membership with the purchase of a lot. Donnell purchased 14 lots.

Although Bostic and Page had promised that the various governmental approvals and permits necessary to facilitate completion of Ocean Ridge Village had been obtained, most had not. Under the North Carolina Coastal Area Management Act (CAMA), permits of varying kinds and complexity are required to develop real estate depending on whether the development is classified as "major" or "minor." Because a sewer permit and an approved sedimentation and erosion control plan were required for the Ocean Ridge Village, a CAMA Major Development Permit was required. The fact that Ocean Ridge Village was also to contain common areas and amenities provided a second, independent reason that a Major Development Permit was required. Yet no such permit was ever applied for or obtained for Ocean Ridge Village. Instead, Bostic obtained a CAMA Minor Development Permit, submitting a plat of Ocean Ridge Village to Onslow County officials that showed a common driveway, a boardwalk, and a clubhouse, but none of

the other common areas and amenities promised to the purchasers. Although the purchasers were promised that the common areas and amenities of Ocean Ridge Village would be substantially completed by summer 1988, this never happened.

By August and September 1990, the North Carolina Department of Environment, Health & Natural Resources notified Bostic of violations of the sedimentation and erosion control plan for Ocean Ridge Village, due to erosion problems at the site. In response to a letter informing him that he was responsible for the violations, Bostic wrote the Department a letter stating that he had resigned from the Ocean Ridge Homeowners Association and suggesting that the matter be taken up with the Association's new officers. In March 1991 another notice of violation was issued to the Homeowners Association and Bostic and Page for failure to obtain a CAMA Major Development Permit for the Ocean Ridge Village. Finally, in April 1991, all minor permits previously issued for development of individual lots in Ocean Ridge Village were suspended. At that time no swimming pool or clubhouse had been completed and no croquet lawns, parking areas, or walkways had been constructed. Landscaping, lighting facilities, and sprinkler systems had been only partially installed. Four driveways had been constructed, but each experienced erosion and washout and needed to be redesigned and repaired.

Winant & Gerold and the DeSmedts brought separate actions against Bostic and Page, seeking compensatory and punitive damages or, alternatively, rescission, based on fraud, breach of contract, and unfair and deceptive trade practices in violation of N.C.Gen.Stat. § 75–1.1. The cases were consolidated for trial, and a jury returned a verdict against Bostic and Page on all issues. On the common law claims, the jury awarded Winant & Gerold $213,960.52 in compensatory damages and $500,000 in punitive damages, and awarded the DeSmedts $199,944.53 in compensatory damages and $500,000 in punitive damages. The jury also answered special interrogatories on the deceptive practices statutory claim, as mandated by the North Carolina statute, finding that Bostic

and Page had committed several acts that proximately caused injury to the plaintiffs. The district court subsequently entered memoranda of judgments finding that Bostic and Page had engaged in unfair and deceptive trade practices, thus entitling Winant & Gerold and the DeSmedts to treble damages under the North Carolina statute.[1] Since the compensatory and punitive damage awards were for a larger sum than were the trebled damage amounts, the plaintiffs elected the larger sum.

The Stanards and Donnell also filed separate actions against Bostic and Page, seeking damages or, in the alternative, rescission, based on fraud, breach of contract, and unfair and deceptive trade practices. The cases were likewise consolidated for trial, and the jury returned a verdict for the plaintiffs on all counts. Having elected to proceed with rescission, the Stanards were awarded $2,283,739.40 by way of restitution, and Donnell, $1,572,943. No punitive damages were awarded. The jury similarly answered special interrogatories finding that Bostic and Page had committed several acts that proximately injured the plaintiffs, which the court found to constitute unfair and deceptive trade practices in violation of the North Carolina statute. The court trebled the restitutionary amounts awarded by the jury and entered judgment in favor of the Stanards in the amount of $6,851,218.20, and in favor of Donnell in the amount of $4,718,829.

## II

■ The appellants contend that the district court erred in permitting witnesses in both trials to give their opinions about what Bostic knew or intended to do, based on their past experiences with him. James Herstine, District Manager for the North Carolina Division of Coastal Management in Wilmington, testified that, in his opinion, Bostic knew or should have known that a CAMA Major Development Permit was required for development of Ocean Ridge Village. He based his opinion on his previous dealings with Bostic

and Page. Herstine testified that since 1985 at least nine notices of violations of land development laws had been issued to Bostic and that Herstine and his office had repeatedly informed Bostic of the permits required by North Carolina laws governing land development activity. Similarly, in the first trial the district court admitted Hayler's testimony that, in hindsight, he would agree with the statement that Bostic never intended to do what he promised would be done.

In each case, the court admitted the evidence pursuant to Federal Rule of Evidence 701, which provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

While the testimony of both Herstine and Hayler has been characterized as opinion evidence, that characterization is somewhat misleading. More accurately, each testified to inferences that could have been rationally drawn from facts of which the witnesses had personal knowledge.

Herstine was able to draw a rational conclusion that Bostic knew of the circumstances requiring a CAMA Major Development Permit based on his prior professional dealings and discussions with Bostic about permits necessary to develop real estate, even though Herstine did not have direct knowledge on the point. The trustworthiness of such testimony is akin to that of any circumstantial evidence from which juries are routinely permitted to draw inferences, and its relevance is not disputed in this case. These circumstances about Herstine's opinion testimony satisfy the requirements of Rule 701.

■ Hayler's testimony likewise satisfied the rule. Hayler was the sales representative of Bostic and Page. He worked closely with them during all relevant periods and

---

1. Under the statute, N.C.Gen.Stat. § 75–1.1, the jury is charged with determining the facts and the court with determining whether a violation occurred. *Hardy v. Toler*, 288 N.C. 303, 218 S.E.2d 342, 345–46 (1975). If the jury awards damages, the court trebles that amount. *See* N.C.Gen.Stat. § 75–16.

carried out their strategy for marketing Ocean Ridge Village. After contemplating all of the conversations he had had with Bostic and Page and measuring them in hindsight against the events of development, he concluded that Bostic never intended to do what he promised purchasers would be done. More than anyone else, with the exception of perhaps Page, Hayler was in a position to be able rationally to draw this conclusion. The jury had before it ample contextual evidence from which to evaluate the opinion. We therefore find that the district court did not abuse its discretion in also admitting Hayler's testimony.

■ Finally, appellants complain that the district court erred in the second trial in concluding that, on examination by plaintiffs, Hayler was a hostile witness and therefore could be examined with leading questions. Federal Rule of Evidence 611(c) provides:

> Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

Appellants argue that because Hayler had been discharged as their agent, he could no longer be considered to be in association with them. Based on Hayler's behavior in the first trial, however, the district court determined otherwise. This is precisely the type of ruling that a trial court, not an appellate court, is in the best position to make, and we cannot conclude that the district court abused its discretion. Rule 611(c) provides trial judges with broad latitude in monitoring the manner in which testimony is extracted from witnesses, and reversal is warranted on the basis of leading questions only if the judge's actions cause the denial of a fair trial. *See Miller v. Fairchild Indus., Inc.*, 885 F.2d

498, 514 (9th Cir.1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990).

### III

The appellants next contend that the district court erred in each trial in denying their motions for judgment as a matter of law on all issues under Federal Rule of Civil Procedure 50, both after completion of the plaintiffs' cases and at the close of all evidence.

■ First they contend that because the complaints filed in these cases failed to allege that the defendant had no intention of fulfilling the promises regarding completion of the common areas and amenities at the time those promises were made, judgment as a matter of law should have been granted on the issue of fraud to the extent that claim was based on these promissory representations, because such present intent was an essential element of the claim. *See Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 266 S.E.2d 610, 616 (1980) (a promissory misrepresentation constitutes actionable fraud "when it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply"). We disagree. Once a case has gone to trial on facts fully discovered by the parties, the determination of whether the issues are limited by the complaint falls within the ambit of Federal Rule of Civil Procedure 15(b), which provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." *See Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir.1990). No surprise or prejudice has been claimed and we believe the district court was correct in rejecting the appellants' argument on this point.

■ The appellants' principal ground for claiming their motions for judgment as a matter of law should have been granted is that the evidence was insufficient to establish all required elements of a claim of fraud.[2]

---

**2.** To establish a claim for common law fraud in North Carolina, a plaintiff must show:
(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4)

which does in fact deceive, (5) resulting in damage to the injured party.
*Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385, 391 (1988) (citation omitted). In North Carolina the require-

To grant a Rule 50 motion the district court must view the evidence in the light most favorable to the non-moving party, drawing every legitimate inference in that party's favor, and determine that the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party. *See Hofherr v. Dart Indus., Inc.*, 853 F.2d 259, 261–62 (4th Cir.1988). If, on the other hand, reasonable minds could differ as to the conclusion to be drawn from the facts under the applicable law, the court must deny the motion. *Id.* at 262.

At the time the appellants' motions for judgment as a matter of law were made, the evidence of fraud before the court included the following. The brochures and materials given to the plaintiffs represented that Ocean Ridge Village was to be high-quality, a "paradise," and a "world-class" seaside resort. Hayler repeated this type of claim in his conversations with the purchasers, assuring them that the various common areas and amenities necessary to make Ocean Ridge Village a first-rate development would be constructed in due course. To give this assurance credibility, he represented that all required governmental approvals and permits *were in place* when, in fact, they were not. Moreover, Herstine, the county official, testified at both trials that Bostic understood that a CAMA Minor Development Permit was insufficient to allow the development of Ocean Ridge Village to proceed *as promised.*

In the first trial Hayler testified that Bostic never intended to do what he told the purchasers would be done and that he heard the architect of Ocean Ridge Village tell Bostic that, if the common areas and amenities were included in the development, a CAMA Major Development Permit would be required. Hayler stated that he thought Bostic "felt that as long as they could get away with Minor CAMA permits, to go ahead and do it." Hayler also talked with Bostic about the need for a sedimentation and erosion control plan, but Bostic told him to "put it off." Hayler stated that Bostic had instructed him to apply for the necessary permits in the name of the homeowners association because

of Bostic's previous violations of North Carolina's real estate laws.

In the second trial Bostic testified that he had not intended to do anything other than finish the swimming pool at Ocean Ridge Village until after a January 1990 meeting in Greensboro, North Carolina (at which the financial responsibility for amenities and improvements was to be clarified). He said the promotional brochures were sent out only to show where the houses to be built in Ocean Ridge Village would be located. The purchasers and Hayler testified, however, that this was not what was represented. Hayler also testified that Bostic had specifically stated that he was familiar with what permits were needed to complete Ocean Ridge Village and that Bostic told him that he wanted to avoid getting a CAMA Major Development Permit.

Perhaps the most damaging evidence presented against Bostic and Page in both trials was the testimony of Brian Nofzinger, the local permit officer for Onslow County, North Carolina. He testified that a CAMA Minor Development Permit was issued for the development after Bostic showed him a plat of Ocean Ridge Village that included only a common driveway, boardwalks going over sand dunes, and a clubhouse facility. None of the other common areas and amenities that had been promised to the purchasers were shown. Based on this plat, for which Nofzinger determined that no additional government approvals and permits were necessary, he issued the CAMA Minor Development Permit.

Viewing this evidence in a light most favorable to plaintiffs, as we must on motions by the defendant for judgment as a matter of law, we are satisfied that the jury had ample evidence from which to conclude rationally that all the elements for proving fraud had been established. Moreover, this same evidence supports the district court's submitting to the jury the question of whether to award punitive damages. *See Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E.2d 297, 301 (1976) ("[F]raud is, itself, one of the elements of aggravation which will permit punitive damages to be awarded.").

ment of scienter embraces both knowledge of falsity and an intent to deceive. *Id.*

■ Having found that there was sufficient evidence to allow the fraud claim to go to the jury, we need not consider appellants' challenges to the denial of their motion for judgment as a matter of law on the other counts. Although a party may assert claims for money damages based on fraud, breach of contract, and unfair and deceptive trade practices, he may succeed on only one basis. *See Cool Light Co. v. GTE Products Corp.,* 973 F.2d 31, 35 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1417, 122 L.Ed.2d 787 (1993). In addition, proof of fraud necessarily constitutes an unfair and deceptive trade practice, *see Winston Realty Co. v. G.H.G., Inc.,* 314 N.C. 90, 331 S.E.2d 677, 681 (1985) and also supports a remedy of rescission and restitution, *see Davis v. Davis,* 256 N.C. 468, 124 S.E.2d 130, 133 (1962).

## IV

■ After the appellate briefs were filed, Page retained separate counsel to appear on his behalf at oral argument to argue that, for reasons unique to Page, it was error to have submitted the punitive damages issue to the jury as to him. Page contends that there is no evidence that he personally had participated in the fraud and that his liability for fraud is at most vicarious. Relying on *Shelton v. Fairley,* 86 N.C.App. 147, 356 S.E.2d 917, *discretionary review denied,* 320 N.C. 634, 360 S.E.2d 94 (1987), he contends that he cannot be held vicariously liable for punitive damages solely due to his relationship as Bostic's partner.

The holding of *Shelton,* however, is not so broad as to relieve Page from responsibility in this case. In *Shelton* the North Carolina Court of Appeals held that former law partners of a deceased executor of an estate were not liable for his activities as executor because those actions did not constitute the practice of law. The court also affirmed the denial of punitive damages against the former law partners because "punitive damages may not be recovered from the estate [or partnership] of a deceased tortfeasor, no matter how aggravated the circumstances." *Id.* 356 S.E.2d at 922. In contrast to the circumstances in *Shelton,* Page was sufficiently involved in the transactions in these cases to make him responsible for fraud. And even if he were not so involved, he would nonetheless be derivatively liable for the conduct of his partner Bostic *acting in the ordinary course of the partnership.* The rule is stated in N.C.Gen.Stat. § 59–43:

Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

Page concedes that he and Bostic were partners in Ocean Ridge Village. Therefore any fraud committed by Bostic while carrying out the ordinary course of the partnership's business is imputable to Page who is thus liable for damages to the same extent that Bostic is.

■ Also challenging the punitive damages award, both Bostic and Page contend that the jury instructions on punitive damages in the first trial provided the jury with unlimited discretion in determining the amount to award, thereby violating their right to due process. While the court did not provide a formula to limit the amount, it did instruct that punitive damages could be awarded only "within reasonable limits" and in such an amount as serves "to punish the defendants and to deter others from committing like offenses." The jury awarded punitive damages in an amount less than three times the compensatory damages. In the overall circumstances, we reject the argument. *See Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 12–20, 111 S.Ct. 1032, 1043–46, 113 L.Ed.2d 1 (1991).

## V

In the second trial the Stanards and Donnell elected to seek rescission of their contractual arrangements with the defendants and restitution of the amounts they had invested in the project. The district court instructed the jury:

If you find that the plaintiffs are entitled to restitution, the plaintiffs would be enti-

tled to be restored to the condition they occupied on the day the contract was entered into ... [and] the court would order that the plaintiffs return their property to the defendants....

In response to the question, "What amount, if any, are plaintiffs entitled to receive as restitution from the defendants," the jury responded with an award of $2,283,739 for the Stanards and $1,572,943 for Donnell. These amounts represented funds invested by the Stanards and Donnell in Ocean Ridge Village. On entering judgments, the district court accordingly ordered the plaintiffs to reconvey the properties they purchased at Ocean Ridge Village to the defendants. The court also purported to apply the provisions of N.C.Gen.Stat. § 75–16 and trebled the jury awards, entering judgments in favor of the Stanards in the amount of $6,851,218.20 and in favor of Donnell in the amount of $4,718,829.

 Bostic and Page contend that the district court misconstrued the North Carolina statute in trebling the amount awarded in furtherance of the rescission remedy. Such an award, they argue, does not represent damages and therefore should not be trebled under the statute. We agree.

Section 75–1.1 of North Carolina's General Statutes makes unlawful "unfair or deceptive acts or practices in or affecting commerce." Section 75–16 was enacted to provide an effective private cause of action for aggrieved consumers in North Carolina, see *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397, 400 (1981), and provides the enforcement mechanism for § 75–1.1:

> If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, *and if damages are assessed in such case* judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

(Emphasis added). By the terms of § 75–16, only "if damages are assessed" is the amount trebled. Because damages were *not* assessed, but rescission elected, we conclude the amount should not have been trebled.

 Not only is that interpretation dictated by the language of the statute, it is supported by applicable North Carolina cases and by reason. In a fraud case, damage is the value of the loss caused by the tortious conduct, and it is measured by the difference between what was received and what was promised by the false representation. *See River Birch Ass'n v. City of Raleigh,* 326 N.C. 100, 388 S.E.2d 538, 556 (1990). To treble such damages provides a penalty rationally and directly related to the harm caused. The remedy of rescission, on the other hand, does not include a notion of damage. It intends to undo the transaction and return the parties to their original status. Because rescission is a remedy alternative to and inconsistent with damages, *see id.,* the law requires the plaintiff to make an election. In giving effect to a rescission remedy, the plaintiff returns what he received and the court orders the defendant to restore the amounts paid. If § 75–16 were construed to direct a trebling of the amount restored to the plaintiff, it would be functioning on only a part of the remedy, irrationally magnifying the purposes of the statute. Instead of trebling damages, as required by the statute, this application would treble the size of the transaction.

The distortion may be illustrated by a hypothetical in which a consumer is aggrieved by a defective steering mechanism in a new automobile. If the defect justifies rescission and rescission is awarded, the consumer returns the car to the dealer and is awarded the $15,000 purchase price. If the consumer, however, elects to claim damages, the court awards the cost of replacing the steering mechanism, $250 in our hypothetical. When N.C.Gen.Stat. § 75–16 is applied to the situation, the damage award of $250 is trebled and the consumer receives $750. But if the statute is interpreted to apply also to the rescission remedy, rescission would result in a court award to the plaintiff of $45,-000. Moreover, if it turned out that the same $250 steering mechanism had been installed in a $50,000 automobile, the consumer

would then receive $150,000. The distinction between the $750, $45,000, and $150,000 trebled awards cannot be rationalized in view of the fact that the same conduct and damage occurred in each situation.

The court in *River Birch Ass'n* appears to support our interpretation. It observes that damages for fraud in the inducement of a contract may be elected as a remedy, in which case the amount may be trebled under N.C.Gen.Stat. § 75–16. It notes, however, that rescission is an alternative remedy, suggesting that it may not be trebled. *See* 388 S.E.2d at 556; *see also Taylor v. Triangle Porsche–Audi, Inc.*, 27 N.C.App. 711, 220 S.E.2d 806, 811 (1975) (holding that plaintiff who had rescinded a contract and recovered the purchase price "was not damaged, nor injured within the meaning of [N.C.Gen.Stat. §] 75–16 so as to warrant treble damages"), *discretionary review denied*, 289 N.C. 619, 223 S.E.2d 396 (1976); *Douglas v. Doub*, 95 N.C.App. 505, 383 S.E.2d 423, 429 (1989) (measuring damages to be trebled under § 75–16 based on the purchaser's reliance interest). *But see Bernard v. Central Carolina Truck Sales*, 68 N.C.App. 228, 314 S.E.2d 582, 585 (upholding under § 75–16 the trebling of an amount deemed to restore the plaintiff to his original condition after relinquishment of property), *discretionary review denied*, 311 N.C. 751, 321 S.E.2d 126 (1984).

Because the monetary amount awarded by the jury in this case was "restitution," which restored all the monies paid by the plaintiffs, and was not damages, it was not subject to trebling under N.C.Gen.Stat. § 75–16. Accordingly, we vacate the judgments in favor of the Stanards and Donnell and remand their cases to the district court for entry of judgments giving effect to the rescission remedy elected by the plaintiffs and awarded by the jury, but without trebling the amount under N.C.Gen.Stat. § 75–16. In all other respects, we affirm.

NOS. 92–1975 and 92–1976—AFFIRMED.

NO. 92–2164—AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.